UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 19-30035-MGM |
| | ) | |
| | ) | |
| CARLOS A. COTTO LOPEZ, | ) | |
|     Defendant | ) | |

MEMORANDUM AND ORDER CONCERNING PRELMINARY HEARING
AND GOVERNMENT'S DETENTION MOTION
January 15, 2020

I.    Background

Defendant Carlos A. Cotto Lopez's original conviction, in Florida, was for conspiracy with intent to illegally distribute Oxycodone, a controlled substance (Dkt. No. 3, Exh. 2). He was sentenced to five years in custody followed by three years of supervised release (Dkt. No 3, Exh. 4). Supervision commenced on August 18, 2017 and was formally transferred to this District on or around August 1, 2019 (Dkt. No. 3). Also on or around August 1, 2019, the Probation Department filed a petition alleging that the defendant had violated his conditions of supervised release by committing another federal, state, or local crime (Dkt. No. 5). The defendant was arrested by the West Springfield Police Department on July 16, 2019 and charged with unlicensed operation of a motor vehicle, a number plate violation, aggravated assault and battery on a pregnant person, domestic assault on a family or household member, larceny, and threat to commit a crime. According to the police report, Emileen Perez, the complaining witness and the defendant's live-in girlfriend, reported that the defendant and Ms. Perez were involved in a verbal dispute that escalated into a physical dispute when Ms. Perez refused to give the defendant the passcode to her phone. Ms. Perez told police officers that the defendant had threatened to blow up the car her children were in and said that he had a gun and would shoot Ms. Perez if she did not give him her passcode. The defendant allegedly fled on a motorcycle

when Ms. Perez called the police. Notwithstanding an attempt by Ms. Perez to withdraw her allegations (Exh. 5), state court charges arising from this incident remain pending.

The court held an initial appearance on the August 1, 2019 petition on August 22, 2019, and appointed counsel. The defendant appeared in response to a summons. The Probation Department had conducted a risk assessment and been informed by Ms. Perez that she had not sought a restraining order and was not in fear for herself or her children. The Probation Department recommended that the defendant remain on supervised release on existing conditions, and that this court defer scheduling a final revocation proceeding and track the related state court proceedings.

On January 10, 2020, the Probation Department filed an amendment to the existing petition, alleging that the defendant had again violated his conditions of supervised release by committing another federal, state, or local crime. This time, the Probation Department requested, and was issued, an arrest warrant. On January 8, 2020, Ms. Perez reported to the West Springfield Police Department that she had received text message that she believed came from the defendant, from whom she had separated, threatening to kill her and her unborn child (Exh. 1). It appears undisputed that the defendant is the biological father of Ms. Perez's unborn child. Ms. Perez informed the individual who sent the text messages that she was going to obtain a restraining order, and she did so on January 8, 2020 on an ex parte basis (Exh. 2). The Probation Department was informed by the West Springfield Police Department that the defendant was served with the restraining order on January 9, 2020 at 8:44 a.m. (Dkt. No. 17). According to Ms. Perez, she received additional threatening text messages that she believed came from the defendant after the restraining order was served. The text messages initially asked Ms. Perez to "drop the charges" and promised to "fix things," then became threatening when she told the

author of the text messages to leave her alone (Exh. 3). Ms. Perez's statement in support of the restraining order alleges that the defendant called the shelter where she was staying and spoke to staff in an effort to locate her, and that, on January 7, 2020, he chased her car while her children were in it. Thus, her application for the restraining order did not depend exclusively on the text messages she indicated she had received from the defendant and his wife (Exh. 2). The parties reported to the court that the state has issued a warrant for the defendant's arrest, presumably on charges of violating a restraining order.

The court held an initial appearance on the amended petition on January 13, 2020. The government moved for detention. On January 14, 2020, the court held a preliminary hearing and heard further from the parties on the question of detention pending a final revocation hearing. *See* Fed. R. Crim. P. 32.1a(6) and (b). At the hearing, the government introduced copies of the text messages allegedly sent to Ms. Perez and a copy of the restraining order and called Ms. Perez to testify. The defendant introduced text messages allegedly sent by Ms. Perez to Cynthia Maldonado, the defendant's wife (Exh. 4), and an August 19, 2019 letter from Assistant District Attorney Kerry Koehler ("ADA") to defendant's state court defense attorney Patrick Nicoletti, informing Mr. Nicoletti that Ms. Perez had attempted to recant the allegations in her July 16, 2019 report to the police. Ms Perez reportedly informed the ADA that the defendant was on parole in Florida and "they" were "trying to send him away for … seven years" (Exh. 5). Ms. Perez testified that she did not end her relationship with the defendant until December 2019.

The defendant contends that he did not write threatening text messages to Ms. Perez on January 8 and 9, 2020 AND THAT Ms. Perez herself is the source of the text messages. Ms. Maldonado, the defendant's wife, testified that Ms. Perez has harassed her by sending her text messages about the defendant. The exhibit of text messages entered in evidence by the

defendant purports to show that the harassing messages to Ms. Maldonado were sent from the same phone number as some of the threatening messages allegedly sent by the defendant to Ms. Perez (Exhs. 1, 4). Ms. Maldonado also believes that Ms. Perez set up a fake Facebook account in the defendant's name.

II.     Analysis

Probable cause exists when the facts and circumstances are sufficient to warrant a prudent person in believing that the defendant committed a crime. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (probable cause for arrest). Only the probability of criminality, not a prima facie showing, is required for a probable cause finding. *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (issuance of a warrant).

The question of probable cause turns largely on the truthfulness of Ms. Perez's reports to the police about the defendant's actions. In July 2019, Ms. Perez initially reported to a victim advocate that the defendant threatened her when she informed him that she was pregnant with his child. She said he flipped out and was then unfaithful to her (Exh. 5). This is a plausible explanation for a confrontation between Ms. Perez and the defendant in July 2019. Ms. Perez's July 22, 2019 recantation is understandable as the product of regret for the consequences to the defendant of her report to the police and that is the inference I draw from Exhibit 5. I note that the state court charges remain pending notwithstanding Ms. Perez's July 22, 2019 recantation. The threats Ms. Perez reported receiving in January 2020 are very similar to the oral threats the defendant allegedly made in July 2019, lending credence to Ms. Perez's belief that the January 8 and 9, 2020 text messages originated with the defendant. That conclusion is further supported by Ms. Perez's testimony that she does not have a restraining order against anyone other than the defendant. The text messages refer first to Ms. Perez's intention to obtain a restraining order,

then to the existence of a restraining order, further strengthening the inference that the messages originated with the defendant (Exhs. 1, 3). Although I do not rule out the possibility that Ms. Perez sent unpleasant text messages to the defendant's wife, I found Ms. Perez to be a generally credible witness. As to the alleged manipulation of electronic evidence, the court cannot make a conclusive determination on the evidence before it. In any event, the July 2019 incident does not depend on text messages for its proof. I note, moreover, that the defendant and his wife have at least as strong a reason to impugn Ms. Perez's motives and actions as Ms. Perez might have to seek to incriminate the defendant. For the foregoing reasons, I find that the government has shown probable cause to believe that the defendant violated his conditions of supervised release by violating state law.

    III.    <u>Detention</u>

I further order that the defendant be held pending a final revocation hearing because the defendant has not shown by clear and convincing evidence that he will not pose a threat to another person or persons if he is released. *See* Fed. R. Crim. P. 32.1(a)(6). The relationship between the defendant and Ms. Perez is volatile. She is responsible for reports to the police that have resulted in the defendant being incarcerated. The text messages threaten death to Ms. Perez, her children, including the unborn child, and the father of one of her children. The defendant's principle argument for release was that the defendant will be arrested on the state court charges, can be the subject of a dangerousness hearing in state court, and will be held by the state if he is deemed dangerous. That there may be parallel state court proceedings does not excuse this court from making the determinations it is required to make under the Federal Rules of Criminal Procedure and the governing statutes. The risk of violence in this type of domestic

dispute is real, and a restraining order can only offer so much in the way of protection. For the foregoing reasons, the court orders the defendant held pending a final revocation hearing. It is so ordered.

                                        /s/ Katherine A. Robertson
                                        KATHERINE A. ROBERTSON
                                        U.S. MAGISTRATE JUDGE